FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 0 9 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, )
) 07-CR-874 (JBW)
v. )
) Statement of Reasons Pursuant to
) 18 U.S.C. § 3553(c)(2)
)
STANLEY FEASTER, )
)
     Defendant. )
)

Jack B. Weinstein, Senior United States District Judge:

## Table of Contents

I. Introduction ............................................................................................................. 2
II. Required Explanation of Sentence ........................................................................ 2
III. Offense, Criminal History, Guidelines Calculations, and Application ................ 3
 A. Instant Offense ................................................................................................ 3
 B. Criminal History ............................................................................................. 4
  1. Minor Street-Related Drug Crimes ............................................................ 4
  2. Ambiguity About Violation of Probation and Punishment ....................... 4
 C. Guidelines Calculations .................................................................................. 7
 D. Harsh Appellate Rulings ................................................................................. 8
IV. Sentence Imposed ................................................................................................. 9
V. Analysis of Sentence Apart from Required Minimum ......................................... 10
 A. Characteristics of Defendant and Instant Offense ........................................ 10
 B. Deterrence ..................................................................................................... 11
 C. Harshness Compare to Those Similarly Situated ......................................... 11
VI. 2009 Report of Sentencing Commission Introducing Doubt as to Prior Appellate Rulings . 12
VII. Respectful Recommendation that Court of Appeals for the Second Circuit Review Rulings Requiring Unnecessarily Harsh Sentence .............................................. 14

## I. Introduction

This defendant is being sentenced to an extra five years imprisonment because of a 2001 youthful disorderly conduct violation likely stemming from his playing dice. The sentence represents a cruel and unnecessarily harsh mandated application of relevant appellate decisions. Required is a sentence of ten years imprisonment for a young man who would otherwise be sentenced to an incarceratory term of half that length. This sentence will negatively impact rehabilitation. It will burden taxpayers with the cost of a needlessly long incarceration. It is inconsistent with sentences for those in similar circumstances, and thus violates the spirit and letter of our basic federal sentencing statute requiring comparability of punishments. It is contrary to our criminal justice system's endorsement of leniency and rehabilitation for youthful offenders. It violates the objectives of New York and federal criminal policy to save instead of destroy those engaged in minor drug-related street crimes.

## II. Required Explanation of Sentence

A sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is outside the range of the sentencing guidelines, the court is required to articulate the specific reasons for imposing it. 18 U.S.C. §§ 3553(a)(4), 3553(c)(2). These "reasons must also be stated with specificity in the written order of judgment and commitment." Id. Even though the mandatory nature of the guidelines has been excised and they are now "advisory," see United States v. Booker, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements for an explicit statement of its reasoning. United States v. Jones, 460 F.3d 191, 197 (2d Cir. 2006).

The written statement of reasons need only be "a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under §

2

3553(a)." United States v. Rattoballi, 452 F.3d 127, 138 (2d Cir. 2006). It should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority." United States v. Cavera, 550 F.3d 180, 193 (2d Cir. 2008) (2d Cir. 2008) (quoting Rita v. United States, 127 S.Ct. 2456, 2468 (2007)) (internal quotations and alterations omitted). The statement should assist the reviewing court and the United States Sentencing Commission in understanding the reasons for the sentence.

### III. Offense, Criminal History, Guidelines Calculations, and Application

A. Instant Offense

On July 16, 2008, Stanley Feaster pled guilty to count one of a forty-count indictment, which charged that between May 2006 and November 2007, Feaster and others conspired to distribute and possess with intent to distribute fifty grams or more of a substance which contained cocaine base, in violation of 21 U.S. C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii).

The crime of conviction carried a harsh mandatory minimum sentence of ten years imprisonment. See 21 U.S.C. §§ 846, 841(b)(1)(A). A statutory "safety valve" relief provision allows defendants who satisfy each of five requirements to avoid application of the mandatory minimum and to be sentenced based solely on the applicable guidelines calculations and appropriate judicial discretion. See 18 U.S.C. §§ 3553(a), 3553(f).

The statutory minimum sentence will not apply if the court determines that the defendant has satisfied each of the following elements: (1) the defendant does not have more than one criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the

offense; and (5) the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense and any related criminal scheme. See 18 U.S.C. § 3553(f). The parties agreed that Feaster satisfied elements (2), (3), (4), and (5) of section 3553(f). At issue was whether this defendant met the first requirement.

B. Criminal History

*1. Minor Street-Related Drug Crimes*

The defendant has a history of minor, drug-related criminal activity. On April 29, 1998, when he was sixteen years old, he was arrested for selling an unspecified amount of crack-cocaine to an undercover police officer; he pled guilty in New York State court to a charge of Criminal Sale of a Controlled Substance in the Fifth Degree, a Class D felony, and, on June 24, 1998, was sentenced to five years probation. Pre-Sentence Report (hereinafter "PSR") ¶¶ 43-45; N.Y. Penal Law § 220.03.

On November 25, 1998, he was arrested and later sentenced based on a charge of Criminal Possession of a Controlled Substance in the Seventh Degree, a Class A misdemeanor. PSR ¶¶ 46-47; N.Y. Penal Law § 220.06. That sentence included a one-year conditional discharge. PSR ¶ 47; N.Y. Penal Law § 65.05.

On September 9, 2003, Feaster was convicted of Criminal Possession of Marijuana in the Fifth Degree and sentenced to time served after one day in custody. PSR ¶¶ 50-51; N.Y. Penal Law § 221.10.

On August 14, 2007, he pled guilty to a charge of Disorderly Conduct and received a sentence of one-year conditional discharge and three days of community service. PSR ¶¶ 52-53; Penal Law § 240.20.

*2. Ambiguity About Violation of Probation and Punishment*

4

One aspect of defendant's criminal history - - the circumstances of a revocation of his probation in 2002 - - was initially unclear. It required additional investigation.

On December 19, 2002, Feaster was sentenced for a violation of the probation imposed in June 1998. PSR ¶ 43. Probation was revoked, and a sentence of eight months imprisonment was imposed. Id. Information on the nature of the violation of probation leading to the eight-month custodial term imposed in December 2002 was not provided in the Pre-Sentence Report.

This violation and the resulting incarceration were critical to understanding the relevant timeline, its effect on defendant's criminal history category, and application of the safety valve. The details originally provided to the court suggested a protracted and inexplicable delay between a violation of probation committed while the defendant was less than eighteen years old and the resulting imposition of an incarceratory sentence for that violation. See U.S.S.G. §§ 4A1.2(d)(2), 4A1.2(e)(4), and 4A1.2(k)(2)(B) (providing that two criminal history points apply for a defendant who committed a criminal act prior to the age of eighteen only if he was sentenced to at least sixty days of confinement for that act and "was released from such confinement within five years of his commencement of the instant offense").

The parties were directed to provide additional information as follows:

> The court requests an explanation as to the reason for the delay in sentencing by the state court with respect to this defendant's November 1998 offense and resulting finding of a violation of probation. The presentence report indicates that the relevant offense occurred on November 25, 1998, while probation was revoked and resentencing imposed on December 19, 2002.
>
> The parties are directed to provide the requested information as soon as practicable.

Order, July 15, 2009, Docket Entry No. 379.

5

After investigation, the government submitted the following information to the court explaining the apparent "delay" in sentencing by the state court for a probation violation:

> The Presentence Report ("PSR") calculates Feaster's Criminal History Category ("CHC") to be II and notes that he is ineligible for safety-valve relief, PSR ¶ 54. Two of Feaster's criminal history points result from the 2002 revocation of his five-year term of probation relating to his April 29, 1998 arrest for the sale of crack cocaine. PSR ¶¶ 43-45.
>
> The PSR notes that "[p]robation records [evidencing the probation revocation] have been requested, but have not yet been received." PSR ¶ 46. The PSR notes that Feaster committed a new crime of selling crack cocaine in November 1998, but stops short of stating that this new crime was the reason for the revocation of probation. PSR ¶ 46.
>
> In fact, Feaster has proffered to the government that *the reason for the revocation of his probation was his arrest for playing "dice" in 2002 and failing to appear for a probation appointment.* These proffer statements may be considered by the Court in sentencing Feaster based on paragraph 4 of the proffer agreement signed by Feaster. That paragraph states that if Feaster "seeks to qualify for a reduction in sentence under 18 U.S.C. § 3553(f)," his proffer statements may be used against him and "the Court may rely on all statements made by [Feaster] in sentencing [Feaster]." Sept. 30, 2008 Proffer Agreement. Therefore, *according to the facts provided by Feaster, there was no delay in the revocation of Feaster's probation and resentencing imposed on December 19, 2002.* He committed the violation in 2002 and was promptly sentenced.

Gov't Letter, July 17, 2009, Docket Entry No. 380 (underline in original; emphasis in italics added). Defendant does not contest the accuracy of this statement of facts by the government, revealing no delay in incarceration for a probation violation.

The court determined that this young and relatively unsophisticated individual may lack a full understanding of the nature of previous criminal proceedings against him. The parties were directed to obtain additional state court records, including the December 2002 sentencing

6

transcript, to determine with more reliability the nature and timing of the violation of probation. See generally Hr'g Tr., July 31, 2009.

The state court sentencing transcript was obtained. It revealed that a July 2001 arrest, resulting in a conviction for Disorderly Conduct (apparently for "playing dice") - - a criminal violation under New York State law - - led to the violation of probation and an eight-month custodial sentence imposed in December 2002. Ct. Ex. 1, Aug. 21, 2009 (Sentencing Tr., Dec. 12, 2002). Feaster was over eighteen years old at the time of the July 2001 incident. There was no state delay with respect to the criminal proceedings against him.

### C. Guidelines Calculations

The July 2001 violation of probation for which Feaster was sentenced to eight months custody in December 2002 required that two criminal history points be added. The September 2003 conviction for Criminal Possession of Marijuana in the Fifth Degree warranted the inclusion of a third criminal history point. The result of these three criminal history points was a criminal history category of two. See U.S.S.G. § 5A (Sentencing Table). A criminal history category two bars application of the safety valve.

A criminal history category of two, in this court's opinion, substantially over-represents this defendant's criminal history and the likelihood of future criminal conduct following release from the lengthy incarceratory term he now faces. As a general matter, a sentencing court may find that a defendant's calculated criminal history category "substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," U.S.S.G. § 4A1.3(b)(1), warranting a lowering of the applicable criminal history category.

Such an application of judicial discretion to reduce an unjustifiably high criminal history category is, however, prohibited by the guidelines for purposes of safety valve eligibility. See U.S.S.G. § 5C1.2(a) (requiring that the defendant "not have more than 1 criminal history point, as determined under the sentencing guidelines *before application of subsection (b) of 4A1.3*") (emphasis added); U.S.S.G. § 5C1.2 cmt. n.1 ("More than 1 criminal history point, as determined under the sentencing guidelines, as used in subsection (a)(1), means more than one criminal history point as determined under § 4A1.1 (Criminal History Category) *before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category).*") (emphasis added). See also U.S.S.G. § 4A1.3(b)(3)(B) (policy statement reiterating that a "defendant whose criminal history is Category I after receipt of a downward departure . . . *does not meet the criterion* of subsection (a)(1) of § 5C1.2 (Limitation on Applicability of Statutory Maximum [*sic*] Sentences in Certain Cases) if, *before receipt of the downward departure, the defendant had more than one criminal history point under § 4A1.1*") (emphasis added).

D. Harsh Appellate Rulings

The Court of Appeals for the Second Circuit has held that the guidelines provision that any criminal history category adjustment otherwise authorized may not be considered in the context of safety valve eligibility is mandatory and not subject to Booker discretion. See United States v. Barrero, 425 F.3d 154, 158 (2d Cir. 2005) (finding that a trial court's refusal to reduce defendant's criminal history category level II to level I and its consequent "denial of safety valve relief did not implicate the Sixth Amendment" and was not in error); United States v. Garcia, 436 F.3d 111, 116-17 (2d Cir. 2006) (applying Barrero to deny defendant's claim that guidelines rule on criminal history calculation for purposes of safety valve analysis violated Booker and the Sixth Amendment); see also United States v. Resto, 74 F.3d 22, 27-28 (2d Cir. 1996). Other

8

federal appellate courts have adopted the same interpretation applied by the Court of Appeals for this circuit. They reject claims of defendants seeking safety valve relief based on arguments that the applicable guidelines provisions should be advisory post-Booker. The anomalous and strikingly harsh sentences that result are generally ignored. See, e.g., United States v. Hunt, 503 F.3d 34, 38-39 (1st Cir. 2007) (affirming trial court's denial of downward departure of criminal history category for safety valve analysis while recognizing "harsh result"); see also United States v. Hernandez-Castro, 473 F.3d 1004, 1006 (9th Cir. 2007); United States v. Ocampo, No. 06-3070, 2007 U.S. App. LEXIS 15629, at *5-7 (7th Cir. June 27, 2007); United States v. Brehm, 442 F.3d 1291, 1300 (11th Cir. 2006); United States v. McCoy, 452 F.3d 234, 239-40 (3d Cir. 2006); United States v. Payton, 405 F.3d 1168, 1173 (10th Cir. 2005); United States v. Vieth, 397 F.3d 615, 620 (8th Cir. 2005).

Binding decisions of the Court of Appeals for the Second Circuit require denial of safety valve relief with respect to this defendant. The mandatory minimum sentence of ten years imprisonment and five years supervised release followed, since the defendant could not satisfy the first element of 18 U.S.C. § 3553(f). See 21 U.S.C. § 841(b)(1)(A).

**IV. Sentence Imposed**

On August 21, 2009, Feaster was sentenced. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere during sentencing and the various in-court factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). See In re Sentencing, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (utility on appeal).

9

At sentencing, the court found the total offense level to be thirty-one and defendant's criminal history category to be two, yielding a guidelines range of imprisonment of between 121 and 151 months. The guidelines range of fine was from $15,000 to $150,000.

Feaster was sentenced to the mandatory minimum of 120 months imprisonment and five years supervised release. A $100 special assessment was imposed. No fines were imposed because the defendant does not, and will probably not in the future, have assets to pay a fine. The underlying charges in the indictment were dismissed upon motion by the government.

## V. Analysis of Sentence Apart from Required Minimum

### A. Characteristics of Defendant and Instant Offense

Respectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements and all other factors listed under 18 U.S.C. § 3553(a) in view of the statutory directive to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The offense is serious. The defendant regularly sold street quantities of drugs, disturbing the safety and peace of residents living in a public housing project.

Feaster has obtained his G.E.D. He has demonstrated an interest in improving his skills through participation in available education and training programs while serving his term of incarceration. His relative youth, acceptance of responsibility, and substantial family support suggest that he is capable of leading a productive, law-abiding life. A sentence of ten years is harsh and excessive in this court's opinion. But it is required by the law as interpreted by the Court of Appeals for the Second Circuit.

B. Deterrence

Under section 3553(a)(2)(B) of title 18 of the United States Code, there are two major considerations: specific and general deterrence. General deterrence is satisfied with the sentence imposed - - and would be satisfied by a far lesser sentence of incarceration. The sentence will send a clear message that any involvement in concerted drug activity will result in a substantial prison sentence. Specific deterrence is achieved in part through substantial incapacitation - - and would more likely be achieved by a lesser sentence that would diminish the chances of turning this young defendant into a hardened criminal.

Absent the mandatory minimum sentence, a below-guidelines sentence pursuant to 18 U.S.C. § 3553(a) would have been imposed, amounting to five years of incarceration and five years supervised release. This court is bound by the relevant decisions of the Court of Appeals for the Second Circuit, which preclude desirable safety valve relief for this defendant. See, e.g., Barrero, 425 F.3d at 158; Garcia, 436 F.3d at 116-17; Resto, 74 F.3d at 27-28.

C. Harshness Compare to Those Similarly Situated

Among Feaster's co-defendants, he appears most similarly situated - - in terms of criminal background, specific offender characteristics, and the crime of conviction - - to three of his co-defendants: (1) Brian Santano, (2) Teon Simons, and (3) Nicholas Hayes. Each pled guilty to the same conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846 and 841(B)(1)(A).

These three co-defendants were each found eligible for safety valve relief and avoided the ten-year mandatory minimum sentence now imposed on this defendant based on minor but critical distinctions in their respective criminal history calculations: Santano was sentenced to a

11

term of thirty-seven months incarceration; Simons is serving a sixty-month term of imprisonment; and Hayes received a sentence of thirty-six months in prison.

### VI. 2009 Report of Sentencing Commission Introducing Doubt as to Prior Appellate Rulings

Sentencing disparities similar to that required by the rulings of the Court of Appeals for the Second Circuit noted above and demonstrated by Feaster's excessive sentence have been examined by the United States Sentencing Commission. A March 2009 Commission report reviewed the effect of prior minor offenses committed by federal drug offenders on application of the statutory and guideline "safety valve" provisions. Michael Iaconetti, Impact of Prior Minor Offenses on Eligibility for Safety Valve (March 2009). Concern had been voiced by some commentators that section 5C1.2(a) and related guidelines have had an "unwarranted adverse impact on offenders' criminal history scores [by unduly raising them] and, ultimately, their guidelines ranges and sentences." Id. at 1. Extensive data collection was completed to analyze the criminal backgrounds of federal drug offenders for fiscal year 2006 and their impact on application of the safety valve provisions in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). Specifically, the effect of "minor offenses" - - that is, misdemeanor and petty offenses that are included in criminal history calculations, see U.S.S.G. § 4A1.2(c) - - was reviewed and analyzed.

The March 2009 Commission study found that in 2006 an estimated 91 of more than 15,000 drug trafficking offenders, or about 0.4% of the total drug trafficking offender population, were subject to a mandatory minimum penalty for the sole reason that one or more prior minor offenses caused a calculation of more than one criminal history point. Iaconetti, Impact of Prior Minor Offenses on Eligibility for Safety Valve, at 5. Under the sentencing guidelines, these few defendants could not be considered for a reduction in their criminal history category even where a court might otherwise have found that a substantial over-representation of

the defendant's criminal history and other considerations would warrant such an adjustment. See U.S.S.G. § 4A1.3(b)(1) (providing guidance on application of downward departure in criminal history category); U.S.S.G. §§ 5C1.2(a), 4A1.3(b)(3)(B) (prohibiting use of such downward departure for purposes of determining safety valve eligibility). These few defendants were, in effect, arbitrarily disqualified from safety valve relief and subject to the mandatory term of imprisonment even though they were no less worthy than those granted such relief. Iaconetti, Impact of Prior Minor Offenses on Eligibility for Safety Valve, at 5. Of this group, some 79 offenders would have been subject to a guidelines range below the statutory minimum term of imprisonment if they had been granted safety valve relief. The Commission noted that the percentage of defendants affected by this severe provision is likely even less at present in light of a 2007 guidelines amendment that narrowed the use of minor offenses in criminal history score calculation. Id. at 5, n.28.

The Commission concluded that the section 5C1.2(a) provision barring a downward departure of a defendant's criminal history category for purposes of the safety valve analysis had a "minimal impact" on sentencing practices:

> Prior convictions for minor offenses have a minimal impact on safety valve eligibility. Some offenders are subject to an increase in their criminal history score and become ineligible for safety valve relief as a result of minor offenses. *However, these offenders comprise a very small percentage of the drug trafficking offender population. Therefore, the notion that including minor offenses in the criminal history calculation causes wide spread inequity in sentencing is an overstatement.* . . . For the vast majority of drug trafficking offenders, past convictions for minor offenses have no effect on the punishment they receive for their federal crime.

Id. at 6 (emphasis added).

13

The inequity flowing from this rather obscure - - and substantively dubious - - guidelines criterion for safety valve eligibility may, as the Commission's report states, be infrequent. But it is no less real and no less unfair for the few ill-fated defendants facing what can only be considered a "pothole on the road to justice." It also violates the fundamental statutory requirement to consider in sentencing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see also Booker, 543 U.S. at 253-54. To take away years of a young man's life based on bureaucratic rigidity under the banner of "criminal justice" is an intolerable cruelty.

## VII. Respectful Recommendation that Court of Appeals for the Second Circuit Review Rulings Requiring Unnecessarily Harsh Sentence

The court is compelled to follow the ruling decisions. It respectfully recommends that the Court of Appeals for the Second Circuit reconsider Barrero and Garcia in light of recent developments including the Sentencing Commission's 2009 study, and that the Sentencing Commission revisit the problem of safety valve applications for defendants with minor criminal records.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: August 26, 2009
Brooklyn, New York